aεε

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PRECISION BRAND PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DOWNERS GROVE SANITARY DISTRICT; | ) | |
| CHASE-BELMONT PROPERTIES, LLC; | ) | |
| AMERICAN NATIONAL BANK & TRUST | ) | |
| CO. OF CHICAGO (n/k/a JPMorgan Chase | ) | Case No. 08-cv-5549 |
| Bank NA) AS TRUSTEE UNDER TRUST No. | ) | |
| 30797; CITIZENS NATIONAL BANK OF | ) | Judge John W. Darrah |
| DOWNERS GROVE (n/k/a U.S. Bank | ) | |
| National Association) AS TRUSTEE UNDER | ) | |
| TRUST No. 2398; LASALLE NATIONAL | ) | |
| BANK ASSOCIATION AS SUCCESSOR | ) | |
| TRUSTEE UNDER TRUST AGREEMENT | ) | |
| DATED 10/14/80 AND KNOWN AS TRUST | ) | |
| No. 2398, n/k/a B7900239830; | ) | |
| RHI HOLDINGS, INC.; LOVEJOY, INC.; | ) | |
| HARPER-WYMAN CO., n/k/a | ) | |
| H.W. HOLDING CO.; and CORNING INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Precision Brand Products, Inc. ("Precision"), brought this action against a number of Defendants, seeking to recover costs and damages incurred as a result of environmental contamination on and around properties that were allegedly controlled by the parties to this action. One of those Defendants, Corning, Inc. ("Corning"), moved to dismiss all claims against it. For the reasons stated below, Corning's Motion to Dismiss is granted.

## BACKGROUND

The following facts are taken from Precision's Complaint and are accepted as true for purposes of resolving Precision's Motion to Dismiss. Precision and various Defendants owned and controlled property in the Ellsworth Industrial Park in Downers Grove, Illinois. (Compl. ¶ 12.) In 2001, the Illinois Environmental Protection Agency ("IEPA") sampled water from private wells in the area adjacent to the Industrial Park and discovered elevated levels of certain hazardous contaminants. (Compl. ¶ 15.) The IEPA and the United States Environmental Protection Agency ("USEPA") then collected additional soil and groundwater samples from various locations at the Industrial Park and discovered contaminants on properties that belonged to, or had belonged to, certain Defendants. (Compl. ¶¶ 16, 18.)

Precision and other property owners paid and agreed to pay certain costs associated with remedying the groundwater contamination. (Compl. ¶ 20.) Other property owners did not. (Compl. ¶ 20.) Precision brought this action against those other allegedly responsible parties, asserting claims for contribution under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), codified at 42 U.S.C. § 9601 *et seq.*, and the Illinois Joint Tortfeasor Contribution Act, codified at 740 ILCS 100/1 *et seq.*, to recover "certain costs and damages incurred by [Precision] which were caused by the release or threatened release of hazardous substances at or from Defendants' facilities in Downers Grove, Illinois." (Compl. ¶¶ 2, 20.) Precision also seeks "a declaratory judgment concerning Defendants' liability to [Precision] for

2

certain future costs and damages that [Precision] may incur arising from the release of" such substances. (Compl. ¶ 2.)

With regard to Corning, Precision does not allege any direct ownership of allegedly contaminated property; rather, Precision alleges that Corning is responsible for the release of contaminants in the Industrial Park "through H.W. Holding." (Compl. ¶¶ 18-19.) H.W. Holding Co. owned and operated certain property "from approximately 1965 or 1966 until that property was purchased by Defendant Lovejoy in approximately 1970 or 1971." (Compl. ¶ 10.) Precision's only specific allegation regarding the relationship between Corning and H.W. Holding is as follows:

> Upon information and belief, Corning is now as a result of various corporate transactions and merger agreements beginning in approximately 1999 the indirect 100% owner of H.W. Holding. Upon information and belief, as a result of these transactions and agreements and its subsequent actions, Corning has succeeded to and is now legally responsible for H.W. Holding's liability for environmental conditions arising from H.W. Holding's operations at Downers Grove, Illinois, and is the alter ego of H.W. Holding for purpose of H.W. Holding's liability for environmental conditions arising from H.W. Holding's operations at Downers Grove, Illinois.

(Compl. ¶ 11.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, the complaint must describe the claim in sufficient detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations in the complaint "must

3

plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 569 n.14).

In addressing a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). However, "[w]here the well-settled pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (*Iqbal*). For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (*Brooks*) (quoting *Twombly*, 550 U.S. at 556).

The Seventh Circuit has summarized the requirements of a well-pleaded complaint as follows:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Id.* at 581.

## ANALYSIS

Corning argues that Precision fails to allege facts sufficient to state a claim for relief against Corning under either a successor-liability or an alter-ego theory and that all claims against Corning must therefore be dismissed.

Precision does not confront Corning's arguments head on. Instead, Precision argues that Corning's motion should be denied because Corning is aware of the facts supporting Precision's claims, notwithstanding the fact that those facts are not specifically alleged in the Complaint. As evidence of this purported awareness, Precision cites to this Court's holding in another, but related, case: *Muniz v. Rexnord Corp.*, No. 04 C 2405, 2006 WL 3210463 (N.D. Ill. Nov. 2, 2006). In that case, the Court held that third-party plaintiffs had presented enough facts concerning Corning's potential liability to withstand Corning's motion for summary judgment. The opinion did not address any claims of alter-ego liability; and the denial of Corning's motion for summary judgment on the third-party plaintiffs' theory of successor liability was based on evidence showing a dispute as to material facts, not the sufficiency of the pleadings -- which then would have been subject to a different, pre-*Twombly* pleading standard. Although the primary purpose of a complaint may be to put the defendant on fair notice of the claims against it, it remains that the complaint itself must include facts sufficient "to state a claim for relief that is plausible *on its face*." *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949). Precision does not otherwise address Corning's arguments regarding the insufficiency of Precision's alter-ego and successor-liability claims. As discussed below, Corning's arguments are persuasive.

"Efforts to 'pierce the corporate veil' are governed by the law of the state of incorporation." *Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 934 (7th Cir. 1996). Precision cites that law in its motion and asserts that the law of New York applies because that is where Corning is incorporated. But Corning is the corporation Precision is trying to reach, and *Stromberg* was a case in which the Seventh Circuit applied the law of Illinois because that was the residence of the corporation whose veil plaintiffs sought to pierce – not the putative alter-ego individuals that plaintiff was trying to reach. *Id.* at 933. Here, Precision apparently seeks to pierce H.W. Holding's corporate veil to get at Corning. Precision's Complaint, however, does not contain any allegations as to H.W. Holding's place of incorporation. Moreover, without deciding the issue, the Seventh Circuit has applied federal common law to determine whether a corporate veil should be pierced for purposes of liability under CERCLA. *See N. Shore Gas Co. v. Salomon*, 152 F.3d 642, 650-51 (7th Cir. 1998) (*N. Shore Gas*), *overruled on other grounds Envision Healthcare, Inc. v. Preferred One Ins. Co.*, 604 F.3d 983 (7th Cir. 2010).

However, it is unnecessary to resolve this choice-of-law issue because Precision's Complaint reveals another problem with Precision's alter-ego theory: timing. A company cannot be liable for the acts of an alleged wrongdoer under an alter-ego theory where the alleged actions giving rise to the claim occurred *before* that company controlled the alleged wrongdoer. *See Bonar v. Ray*, No. 09-cv-1185, 2010 WL 1050251, at *6 (C.D. Ill. Mar. 17, 2010) (explaining that alleged alter-ego defendants could not be liable for other entities' misrepresentations if the alleged alter-ego

defendants did not control the other entities at the time the alleged misrepresentations were made), *mot. for reconsideration granted on other grounds*, 2011 WL 1100467 (C.D. Ill. Mar. 22, 2011). Precision's allegations do not plausibly suggest that Corning controlled H.W. Holding at the time H.W. Holding controlled the property at issue. To the contrary, Precision specifically alleges that H.W. Holding transferred the contaminated property to Lovejoy in 1971, at the latest, and that Corning did not acquire ownership of H.W. Holding until 1999 at the earliest. In other words, the contamination on H.W. Holding's property had to occur over 25 years before Corning is alleged to have acquired ownership in H.W. Holding. Thus, Precision has not adequately pled a right to relief against Corning on the theory that H.W. Holding was Corning's alter ego at the time H.W. Holding owned the property at issue. *Cf., Cent. States, Se. & Sw. Areas Pension Fund v. Denny*, 250 F. Supp. 2d 948, 956 (N.D. Ill. 2003) (dismissing alter-ego claim because the plaintiff "has simply not alleged sufficient facts that would allow this Court to find that Defendants were the alter ego of [Defendant] at the time [of the alleged acts giving rise to liability]").

Precision also alleges that Corning succeeded to H.W. Holding's environmental liabilities. Although the Seventh Circuit recognizes the possibility of successor liability in the context of claims under CERCLA, the general rule is that one corporation does not acquire the liabilities of another simply by virtue of purchasing that corporation's assets. *See N. Shore Gas*, 152 F.3d at 649, 651. There are four exceptions to that general rule: "(1) the purchaser expressly or impliedly agrees to assume the liabilities; (2) the transaction is a de facto merger or consolidation; (3) the purchaser is a 'mere

7

continuation' of the seller; or (4) the transaction is an effort to fraudulently escape liability." *Id.* at 651.

Precision does not allege any facts that would support a reasonable inference that any of those four exceptions apply to Corning's acquisition of H.W. Holding. Precision simply alleges that Corning became the "indirect 100% owner of H.W. Holding" through various transactions and agreements and that "[u]pon information and belief, as a result of these transactions and agreements and its subsequent actions, Corning has succeeded to and is now legally responsible for H.W. Holding's operations at [the Industrial Park]." (Compl. ¶ 11.) "Threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are not sufficient to state a plausible claim for relief. *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). Precision's threadbare allegations are insufficient to state a plausible claim of successor liability against Corning. All claims against Corning are, therefore, dismissed without prejudice.

In a footnote, Precision asks for leave to amend its Complaint if Corning's Motion is granted:

> In the event the Court prefers to see the facts underlying in [*sic*] its November 2, 2006 Memorandum Opinion and Order in *Muniz* detailed in the pleadings in this case, Precision respectfully prays (in the alternative) for leave to file an amended complaint pursuant to Federal Rules of Civil Procedure, Rule 15(a)(2).

(*See* Pl. Resp. to Corning, Inc.'s Mot. to Dismiss Plaintiff's Compl. 5 n.2.) Precision does not otherwise explain what facts it would allege to state a sufficient claim for relief against Corning. If Precision desires to amend its Complaint, Precision may request

leave to do so by a separate motion consistent with the requirements of Federal Rule of Civil Procedure 11.

## CONCLUSION

For the reasons stated above, Corning's Motion to Dismiss is granted. All claims against Corning are dismissed without prejudice.

Date: August 8, 2011

JOHN W. DARRAH
United States District Court Judge